IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

G'ESA KALAFI,

          Plaintiff,

v.

LEBBEUS BROWN, GARY BOUGHTON,
LIEUTENANT CICHANAWICZ, and
DANIEL WINKLESKI,

          Defendants.

OPINION AND ORDER

Case No. 19-cv-319-slc

---

*Pro se* plaintiff G'esa Kalafi, a prisoner currently incarcerated at the Wisconsin Secure Program Facility (WSPF), is proceeding in this lawsuit under 42 U.S.C. § 1983, on claims that in September of 2015, defendants, Lebbeus Brown, Lieutenant Cichanawicz, and Daniel Winkleski violated his First Amendment rights by confiscating his outgoing mail, issuing him a conduct report, and keeping him on administrative confinement status in violation of a state court order. In particular, on August 28, 2015, Kalafi won a petition for a writ of certiorari in state court, in which he had challenged the timeliness of his administrative confinement review that was supposed to have occurred on January 14, 2015. On September 20, 2015, Kalafi attempted to send his mother a copy of the state court order, as well as a letter that contained the allegedly threatening statements. That mailing was confiscated and became the subject of the conduct report and administrative confinement status which form the basis of Kalafi's First Amendment claims. Currently before the court are two substantive motions: Kalafi's motion to amend his complaint (dkt 27, 28), and defendants' motion for partial summary judgment on exhaustion grounds (dkt. 15). For the reasons that follow, I am denying both motions.

Kalafi recently filed a motion (dkt. 29) to change the schedule if I granted leave to amend; because I am denying leave to amend, I am denying this motion as moot.

I. **Motion to Amend**

Under Federal Rule of Civil Procedure 15(a)(2), the court "should freely give leave when justice so requires." *Id.* "Leave to amend pleadings is left to the sound discretion of the district court." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860-61 (7th Cir. 2001). The court may deny leave to amend where there has been "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015).

Here, Kalafi seeks to proceed on an amended complaint that includes additional allegations related to two proposed defendants – WSPF Warden Gary Boughton and Tim Haines – as well as a Fourteenth Amendment due process claim. Kalafi's motion came three months after I entered the preliminary pretrial conference order in this case, in which I warned Kalafi that the longer he waited to seek leave to amend, the less likely his motion would be granted. Kalafi has not explained why he did not move to include additional allegations with respect to these defendants and claims until June, but I will not deny his motion for his lack of good cause. Instead, I will deny it because allowing him to amend to include these additional claims and defendants would be futile.

    A. **Boughton**

In Kalafi's original complaint, he had included Boughton as a defendant for his involvement in failing to remove Kalafi from administrative confinement status immediately after he the state court concluded that his administrative confinement review was untimely. However, at screening, I dismissed Boughton as a defendant for lack of personal involvement:

>Kalafi has not alleged that Boughton was personally involved in any of the events comprising his claims. Kalafi may not proceed against Boughton vicariously by virtue of his role as WSPF's warden. *See Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003); *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) ("[Section] 1983 does not allow actions against individuals merely for their supervisory role of others."). While Kalafi claims that Boughton ignored the writ of certiorari order and has the "sole authority" to place prisoners on A/C status, Kalafi has not alleged that Boughton had any involvement in the conduct report process that resulted in Kalafi's placement in segregation in September of 2015. Kalafi also claims that Boughton failed to notify him that his mail was being monitored, but he has not alleged any facts suggesting that Boughton knew or had reason to know that Brown was monitoring Kalafi's mail. Accordingly, Kalafi may not proceed against Boughton under § 1983.
>
>(Dkt. 8, at 4-5.)

Kalafi seeks to proceed against Boughton based on the following additional allegations:

- As of the August 28, 2015, order, Boughton was warden and thus had the authority to remove him from administrative confinement status, but he failed to do so.

- When Kalafi received the August 28, 2015, order, he submitted an inmate complaint. In it, Kalafi acknowledged that an administrative confinement hearing had been held on June 10, 2015, while the state court proceeding challenging the allegedly untimely administrative confinement hearing was still pending. However, Kalafi argued that well before then, on January 10, 2014, he should have been released from segregation, and thus he was being held on segregation erroneously since that date.

- Boughton responded to Kalafi's inmate complaint by stating that Kalafi was not on administrative confinement status due to the January 15 or June 10 hearings, and instead, Kalafi was on administrative confinement status due to an August 5, 2015, hearing. Boughton further noted that a Wisconsin Assistance Attorney General was requesting clarification from the Wisconsin court with respect to the August 28, 2015, order. Therefore, Boughton dismissed Kalafi's complaint.

3

- On September 17, 2015, Boughton told Kalafi that he would remain on administrative confinement status until his transfer to Waupun Correctional Institution in November of 2015.

Based on these additional allegations, Kalafi maintains that he should be allowed to proceed on Eighth and Fourteenth Amendment claims against Boughton for failing to remove him from AC status following the August 28, 2015, order granting Kalafi's petition for a writ or certiorari.

However, these allegations do not support a finding that Boughton actually was involved in Kalafi's continued placement on administrative confinement. All Kalafi alleges is that Boughton was involved in dismissing Kalafi's complaint and that he was still being held in administrative confinement even after the August 28, 2015, order. Yet Boughton dismissed Kalafi's complaint because by that date, a hearing had already been held on Kalafi's placement. Kalafi has not alleged that Boughton was involved in that August 5, 2015, hearing, or otherwise made a decision with respect to his placement. As such, there continues to be no basis to conclude that Boughton can be held accountable for the decision to continue Kalafi's placement on administrative confinement.

**B.     Haines**

Kalafi seeks to proceed against Haines because Haines was working as the warden when Kalafi filed his writ of certiorari with the state court in early 2015, and thus was the named respondent to that action. In particular, Kalafi claims that because Haines failed to remove him from administrative confinement status on January 14, 2015, the date by which WSPF should have reviewed his administrative confinement status, Haines violated his Eighth and Fourteenth Amendment rights. Even assuming that Haines was the acting warden at that time, Kalafi has

4

not alleged that Haines was personally involved in the failure to hold a timely administrative confinement review hearing, or that Haines was aware that Kalafi was seeking a writ of certiorari. As such, it appears Kalafi would like to proceed against Haines solely because of his position as warden in January of 2015. Because Kalafi may not pursue such a claim under § 1983, *see Zimmerman*, 226 F.3d at 574 (7th Cir. 2000), he may not proceed against Haines.

### C. Fourteenth Amendment

At screening, I denied Kalafi leave to proceed on a Fourteenth Amendment due process claim as follows:

> Kalafi claims that he did not receive adequate process because he did not receive fair notice that his mail would be monitored, and because Cichanawicz was a biased decision-maker. Generally, a prisoner facing transfer to and confinement in segregation is "entitled to informal, nonadversarial due process." *Westefer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012) (citing *Wilkinson*, 545 U.S. at 211-12). "Informal due process requires only that the inmate be given an opportunity to present his views" to a neutral decisionmaker. *Id*. at 685 (internal quotation marks omitted). Also, prisoners are entitled to notice of the conduct that is prohibited in prison. *Rios v. Lane*, 812 F.2d 1032, 1038 (7th Cir. 1987); *see also Toston v. Thurner*, 689 F.3d 828, 832 (7th Cir. 2012) (a deprivation of liberty or property "without fair notice of the acts that would give rise to such a deprivation violates the due process clause").
>
> Taking Kalafi's notice argument first, he does not suggest that he did not have fair notice of the prohibitions against threats and the unauthorized use of mail for which he was *punished*. Instead, he relies on the fact that no one at WSPF informed him that his mail was being monitored. As noted above, prisoners do enjoy First Amendment rights to send and receive mail, but prisons may *screen* outgoing non-legal mail because that practice furthers an important governmental interest and is no greater restriction than necessary. *See Koutnik v. Brown*, 456 F.3d 777, 784-85 (7th Cir. 2006); *Wolff v. McDonnell*, 418 U.S. 539, 575-77 (1974);

> *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005). Indeed, the DOC has a policy that allows prison personnel to inspect outgoing mail in certain circumstances. *See* Wis. Admin. Code § DOC 309.04(4) (prison personnel may open and inspect incoming and outgoing mail to ensure the safety of the institution, institution staff, inmates, and the general public). Even assuming Kalafi did not receive a memorandum that he was on a mail monitoring list, Kalafi does not suggest that the DOC's policy related to the inspection of incoming and outgoing mail is vague or does not apply to him. As such, there is no reasonable basis to conclude that Kalafi lacked fair notice that Brown or other WSPF staff could, and would, review his outgoing correspondence.
>
> Dkt. 8, at 8-9.

In his proposed amended complaint, Kalafi casts this claim in a slightly different light, claiming that defendants Brown, Cichanawicz, and Winkleski did not provide him fair notice that he couldn't send a copy of the actual order, not that he was on mail monitoring. Yet Kalafi was not punished for sending his mother a copy of the order, he was punished for sending a letter that allegedly contained threats. Kalafi does not suggest that the policy prohibiting threats did not provide fair notice. As such, there is no basis to conclude that Kalafi lacked fair notice that his September 20, 2015, mailing to his mother may be confiscated and subject him to punishment. Accordingly, since Kalafi's proposed amended complaint does not support any additional claims or defendants, I'm denying his motion to amend as futile.

## II. Exhaustion

Defendants seek summary judgment in their favor on Kalafi's First Amendment retaliation claim. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, a prisoner also must "properly take each step within the administrative process" to comply with § 1997e(a). *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), and filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), that are "in the place . . . at the time, [as] the [institution's] administrative rules require." *Pozo*, 286 F.3d at 1025.

The purpose of this exhaustion requirement is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006); *see Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement"). If a prisoner fails to exhaust administrative remedies before filing his lawsuit, then the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that plaintiff failed to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

### A. Wisconsin's Procedures for Challenging Disciplinary Proceedings

Under the regulations that existed during the relevant time period, to exhaust a claim related to a conduct report, prisoners must raise it at the disciplinary hearing or on appeal to the warden. *See* Wis. Admin. Code § DOC 303.82(1). The warden's decision is final with respect to the sufficiency of the evidence. *Id.* § DOC 303.82(4).

Under Wis. Admin. Code § DOC 310.08(2)(a), an inmate may not use the Inmate Complaint Review System (ICRS) to raise "[a]ny issue related to a conduct report, unless the

inmate has exhausted the disciplinary process." In other words, "if an issue 'is related to a conduct report, the inmate must raise it at the time of his disciplinary hearing and again on appeal to the warden, assuming the matter is not resolved at the disciplinary hearing stage.'" *Baker v. Faltynski*, No. 12-cv-125-wmc, 2014 WL 713132, at *3 (W.D. Wis. Feb. 25, 2014) (quoting *Lindell v. Frank*, No. 05 C 003 C, 2005 WL 2339145, at *1 (W.D. Wis. Sept. 23, 2005). Once the disciplinary appeal process is complete, then the inmate may use the ICRS, but only to appeal procedural errors related to the disciplinary hearing process. *See* Wis. Admin. Code §§ DOC 303.76(7), 310.05, 310.08(2)(a), (3).

Prisoners start the complaint process by filing an inmate complaint with the institution complaint examiner within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.09(6). The complaint may "[c]ontain only one issue per complaint, and shall clearly identify the issue." *Id.* § 310.09(e). If the institution complaint examiner rejects a grievance for procedural reasons without addressing the merits, an inmate may appeal the rejection. *Id.* § 310.11(6). If the complaint is not rejected, the institution examiner makes a recommendation to the reviewing authority as to how the complaint should be resolved. *Id.* § 310.11(6). The offender complaint is then decided by the appropriate reviewing authority, whose decision can be appealed by the inmate to a correctional complaint examiner ("corrections examiner"). *Id.* §§ 310.12, 310.13. The corrections examiner then makes a recommendation to the Secretary of the Department of Corrections, who takes final action. *Id.* §§ 310.13, 310.14.

B.      Kalafi's Challenges to the Conduct Report

In this lawsuit, Kalafi is proceeding on First Amendment free speech and retaliation claims against Brown, Cichanowicz, and Winkleski, for (1) Brown's issuance of a conduct report charging Kalafi with unauthorized use of the mail and threats, in violation of Wis. Stat. §§ 303.49(9), 303.18(1), (2) Cichanowicz's guilty finding, and (3) Winkleski's affirmance of the guilty charges.  Kalafi's retaliation claims are premised on his assertion that these defendants intended to punish him for sending his writ of certiorari opinion and a non-threatening letter to his family members, which almost completely overlaps with his free speech claims.

During his conduct report proceedings related to those charges, it is undisputed that Kalafi did not specifically assert retaliation as a defense.  Instead, he argued that his letter did not constitute a threat and his free speech rights were being violated.  In particular, Kalafi made the following oral statement during the conduct report hearing:

> The definitions of bodily harm under the 303.02 subsection 3 under bodily harm on how it is defined.  And subsections 19 harass and how it is defined.  That's only because the criteria to threats, the letter doesn't detail anything specific about threat harm or harass.  I want you to consider that I haven't received a conduct report in the last 2 ½ years and I believe that the conduct report is in violation of the first amendment to express myself.

 (Pusich Decl., Ex. 100 (dkt. 17-1) 5.)

 Kalafi also submitted a written statement arguing he was not guilty because:

> There is NO specific direct order of a threat, harass or intimidation demand. True enough I tell a person that he can have $1200 of the $2700 owed to me but that's for making the call, [t]hats for standing on the situation for me NEVER do I request a person to physically harm, threaten, harass or intimidate Michael Ray by any stretch of the imagination, e.g. tell him if he don't give me my money you gone do something to him, talk to him aggressively, keep calling him everyday . . . . there is none of this in said letter. . .  In fact, the report writer excluded f[rom] the c/r that the letter on the very end I told the person if he's not going to stand

on it don't do it at all, something to that affect, which also negates the report writer's idea of a rule violation.

[T]his is an obvious case of some old white man (Captain L. Brown) misinterpreting language from my black culture and not being able to decipher it he automatically associated it with a violation, violence, a threat to someone, this type of mentality from prison officials and other authority figures only create a[n] outcome of injustice for individuals like myself.

(*Id.* at 9.)

On October 13, 2015, Kalafi appealed the decision, arguing that the hearing officer, defendant Cichanowicz, changed the words in the letter to make them sound more threatening. (*Id.* at 1.) Kalafi specifically claimed "[t]he hearing officer knew exactly what he was doing, he wrote it twice . . . disciplining accused for exercising his 1st amendment right to express himself to his family is harmful." (*Id.*)  Kalafi included a few other statements challenging the motivation of conduct report writer (Brown), and hearing officer (Cichanowicz):

The [hearing officer] merely quoted the conduct report verbatim as his reasons for guilt and credit the report written by the report writer and the report writer.
. . . .

The [hearing officer] intentionally changed the word in the evidence so to attempt to have the evidence meet the criteria of the charges: This is a due process violation, tampering with evidence, and shows an appearance of bias committee – changing this word in the evidence to assist the report writer in his endeavor of a guilty finding. . . .

*Id.*

Winkleski affirmed Cichanowicz's guilty findings, reasoning that the letter "communicated a plan to harm or at the least harass or intimidate another," and that Kalafi was using the mail to direct the recipient to "intimidate, at the very least," another. (*Id.*)

10

On October 9, 2015, Kalafi submitted an inmate complaint, WSPF-2015-18915, in which he argued that the conduct report violated his First Amendment right to freely express himself. (Dkt. 22-3, at 6.) The inmate complaint examiner rejected Kalafi's complaint as beyond the scope of review because it regarded a conduct report that had not yet been resolved through the disciplinary process.

On November 9, 2015, Kalafi again challenged the conduct report proceedings in an inmate complaint, WSPF-2015-20828. In this complaint, Kalafi challenged several aspects of the conduct report proceedings, characterizing them as procedural defects. Among his complaints were that (1) the hearing officer simply incorporated the statements in the conduct report without any independent analysis, (2) the hearing officer "intentionally" changed the language in the letter, thus changing the meaning of the sentence, (3) the conduct report violates his right to free speech. (Ex. 101 (dkt. 17-2) 14.)

On November 19, 2015, ICE Ellen Ray concluded "no procedural errors are noted and dismissal of the complaint is recommended." (*Id.* at 2.) On November 23, 2015, Warden Gary Boughton dismissed the conduct report per Ray's recommendation. (*Id.* at 3.) Kalafi timely appealed, and over six months later, on June 30, 2016, the CCE recommended dismissal, concluding that the only issue that raised a procedural defect was how the conduct report was classified, and that the remaining issues related to the sufficiency of the evidence, which were beyond the scope of the ICRS. (*Id.* at 7.)

### C. Analysis

Defendants seek judgment on Kalafi's retaliation claims because he failed to identify the protected conduct being retaliated against, and he failed to raise the concept of retaliation during

11

his hearing. Defendants are correct that to exhaust his retaliation claims, Kalafi had to raise *both* the protected conduct that caused the retaliation *and* the retaliatory act to adequately exhaust his retaliation claim. *Lockett v. Goff*, No. 17-cv-93-jdp, 2017 WL 4083594, at *2 (W.D. Wis. Sept. 13, 2017); *Wine v. Pollard*, No. 08-cv-173-bbc, 2008 WL 4379236, at *3 (W.D. Wis. Sept. 23, 2008). However, Kalafi's oral and written statements during his conduct report hearing, as well as his appeal to Winkleski, identified the protected conduct to be what he described as the non-threatening statements in the letter. Kalafi's dissection of the meaning of his statements in the letter, as well as his assertion that his First Amendment rights were violated were sufficiently clear to alert prison officials that he felt his letter was protected conduct. Likewise, Kalafi's statement that the conduct report violated his First Amendment right to express himself was certainly clear enough to identify the retaliatory act.

Yet defendants further maintain that Kalafi had to invoke the concept of retaliation as well to exhaust this claim. In support, they point out that in another case, *Boyd v. Heil*, No. 17-cv-209-wmc, 2020 WL 137300 (W.D. Wis. Jan. 13, 2020), Judge Conley held that a prisoner pursuing First Amendment free speech and retaliation claims failed to exhaust his retaliation claims because he did not actually allege that the censorship of his mail and associated conduct reports were intended to punish him for engaging in protect conduct. *Id.* at *3. Kalafi argues that he does not need to specifically use the word "retaliation" or reference the conduct report as "retaliatory" to exhaust his claim.

I agree that Kalafi would not need to invoke that specific word to alert prison officials to his concern that officials were punishing him for engaging in protected conduct. So, here's

12

the question: were Kalafi's focus on his right to free speech coupled with his failure to specifically reference retaliation insufficient under Wisconsin's grievance system?

"When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). "As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief." *Id.* Here, defendants focus on the distinction between a free speech claim and a retaliation claim: the *motivation* of the individual taking the retaliatory action. Indeed, to state a claim for retaliation, a plaintiff must allege that the First Amendment activity was "at least a motivating factor" in a defendant's decision to take the retaliatory action. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). At least one district court has concluded that, in order to give prison officials the opportunity to investigate a claim of retaliation, the prisoner must raise his concerns about retaliatory *intent*. *See Malone v. Clark*, No. 04-C-229-C, 2004 WL 2504211, at *5 (W.D. Wis. Oct. 26, 2004) (plaintiff failed to exhaust his administrative remedies with respect to retaliation claim because he did not make it clear in his inmate complaint that he "intended to challenge defendant Clark's motive for issuing him a conduct report"). Even assuming that this is required, I conclude on this record that Kalafi's written statement and appeal sufficiently raised a concern about the intent driving the challenged conduct report.

At his conduct report hearing, Kalafi claimed that Brown (1) omitted a portion of the letter that would have made it clear it wasn't threatening, and (2) misinterpreted his statements and made assumptions about him based on his race. Kalafi's challenge to Cichanowisz's handling of the hearing is even more clear: Kalafi explicitly claimed that Cichanowisz "knew

13

exactly what he was doing" in misstating words from the letter in a manner that made his statements seem more threatening, and that he was disciplined "for exercising his 1st amendment rights to express himself." Although Kalafi did not expressly state that he believed that they wanted to punish him for making protected statements, his assertions sufficiently flagged Kalafi's concern that he was punished by Brown and Cichanowisz *because* he had engaged in protected conduct. Since this would be sufficient to support a retaliation claim under a notice-pleading standard, it would be sufficient to alert prison officials of his concern for retaliation. Accordingly, defendants have not carried their burden to establish that Kalafi failed to exhaust his administrative remedies with respect to his retaliation claims.

## ORDER

IT IS ORDERED that:

1) Plaintiff G'esa Kalafi's motion to amend (dkt. 27) is DENIED.

2) Defendants' motion for partial summary judgment (dkt. 15) is DENIED.

3) Plaintiff's motion to stay (dkt. 29) is DENIED as moot.

Entered this 9th day of September, 2020.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge